Next case is Richard Carlson versus the American Systems Protection Board, 073071. Welcome back, Mr. Breuer. Thank you very much, John. Nice to be back. Well, glad to see friends of the board are here. Patent law is sometimes arcane to me, but the MSPB has its points of interest, too. And one of those is the enforcement procedures used by the board to deal with settlement agreements. The board is very clear, your honors, on the time limits for filing petitions for review with the board, just as you are with filing petitions or appeals with this court. And the regulations are also extremely clear on the time limit for initiating an appeal with the board. The board has often dismissed cases that are only late by a day or so. But in the enforcement side, the regulation is far from clear. The board's regulation on enforcement deals with basically two types of orders. One is a decision on the merits by the board, so-called final decision. That's where the person has won the case. They're seeking some type of remedy that they don't receive automatically from the agency. They go into an enforcement or a compliance procedure. The second is with respect to settlements. In a lot of cases, 50% of the board's caseload is settled, more or less, of those that aren't dismissed for jurisdictional or timeliness reasons. So a lot of settlements. And these settlements are closed out by initial decisions. And with a lapse of 35 days after the initial decision, the decision becomes a final decision. And then the fun begins, because what happens is the settlements break down. People don't necessarily do what they intend to do or thought they intended to do at the time they settled. Isn't the test here a reasonable time? And isn't that a matter of discretion? There's lots of discretion involved. The legal test is a little bit more complex. The regulatory provision requires that the enforcement petition be filed promptly. Promptly is not defined in the regulation. The enforcement petition is measured in terms of promptness under the case law, both the board and this court. And that case law does not track the type of decisions you find that are rejecting appeals and petitions for review with some time. Instead, another measure is used. And that measure has been announced by this court in the case upon which we rely principally. And that's the case of Poet. That was a decision that injected into the equation as an element. But now, counsel, didn't Kastorsky Kastorsky? Before Poet? Yes. By chronology, right. And in Kastorsky, we said unreasonable delay, reasonable time period. Yes. And we never mentioned anything about material prejudice or any of that. No. So the test, as set by Kastorsky, was a reasonable time. Now, if I understand your argument, you're saying Poet changed that? No. Poet didn't change it. Poet added definition. Because you get back to the basic question of what's a reasonable time? What's prompt? What's reasonable? Well, the answer is it's discretionary. Well, fine. If it's a completely discretionary test, then we're out of court. But it depends on the circumstance. Of course. And that's what Kastorsky said. That's exactly so. And within that framework, then the discretion is exercised. Exactly so. Or is necessary. And two years later, along comes Poet versus our friends at the MSPB, another enforcement time decision where the court says, ah, Kastorsky says reasonable. And the way we're going to interpret reasonableness is we're going to draw an analogy to the doctrine of laches. And the court comes right out and says what laches involves. Now, I don't know much about patent law, but I learned a little bit, aside from occasional references in this court to Feinberg or Estoppa, which will remain with me forever, to the doctrine of laches, which seems to be well-entranced in the patent litigation before this court. It's a concept which seems to find some repetitive dealings with these court's opinions in the patent law. But Poet didn't equate reasonableness with laches. What Poet said, Robert, it didn't say reasonableness is laches. It says that it's conceptually similar to the defense of laches. And then when I read it in context, it simply made reference to the fact that in a laches test, you have both the determination of reasonableness and a determination of prejudice. Yes, sir. It didn't say that, therefore, the reasonableness determination following Kaczarski encompasses also a prejudice test. I would not read it that way, Your Honor. When I look at Kaczarski compared with the Poet case, in the Poet case, the defendant is supposed to show that the plaintiff delayed following the lawsuit, talking about patent cases perhaps, but analogizing it to an appeal or a fourth proceeding in the MSPB for an unreasonable and inexcusable length of time from the time that he knew or should have known of the claim, and that the delay operated to the prejudice of the defendant. But that's what the court says is the definition of the laches defense. But then the very next line after the defendant is, in either case, and I assume you agree with me that what they mean is, in either case, i.e. a petition for enforcement of settlement or in a laches context, unreasonable delay is needed. They don't say, in either case, both prongs. They said, in either case, the first prong of the laches defense and unreasonable time is needed for a petition for enforcement of settlement. Your Honor, if the court please, I You don't get to the question of defense prejudice, and still you show the plaintiff unreasonably delayed. If the plaintiff didn't unreasonably delay, you don't worry about defense prejudice. It's only when there is an unreasonable and inexcusable delay, and then you worry about defense prejudice. As those But how does that statement in Poet read a prejudice requirement into the reasonableness requirement following the disarsum? I can't read it any other way. If the court says, we're going to treat reasonableness under a laches approach, which is, the court said No, it said it's conceptually similar. Yes, conceptually similar. It's not the same as you're going to treat it under a laches approach. It says it's conceptually similar. Maybe they were talking about the conceptual similarity between the first prong of laches. It's possible, like you said before, it's very hard for me to read it in the mind of somebody else. All I can read is what's on the paper. And if the court in Poet, in a civil service case, starts talking about laches, then I think that determines the course of the law for the Merit Systems Protection Board. I can't figure out exactly what the court might otherwise have meant. But they injected the concept of laches into a civil service. What they meant was unreasonable delay is needed. That's what they say in the very next sentence. Yes, unreasonable. Unreasonable delay is a requirement in Poet. Unreasonable and inexcusable length of time in the time a person knew that something had gone awry with a settlement agreement. That is my reading. I believe those are the words of the Poet case. So when I look at that, it appears to me that the court is suggesting, and this is not the first time they brought laches into a civil service case, but it is the first time that I've seen laches applied in an enforcement proceeding. There are other types of cases where laches have arisen in this court in the context of civil service cases. This is a completely novel. But it is the first time I saw it here. Now, this is what 2004 was the Poet case. And I haven't seen any decision since that time from the court that has gone to say, oh, we really didn't mean laches, we meant something else. We're going to retreat to some other type of formulation here, not a precedential decision in any event. Nope, not a precedential decision that I can recall that I can cite here under the court's rules. So my reading of Poet injects an element of laches. If the court is to say that's not to be the case, then that's not to be the case. But I think it's a reasonable approach, rather than the usual extremely strict approach by the board with respect to the filing of appeals that have a regulatory deadline and the filing of petitions for review. These settlement agreements constitute best benefits that have been negotiated. The board has not chosen to redo its regulation to make that regulation more clear. The regulation that the board uses for these enforcement cases is extremely unclear. It does not define what's reasonable. It doesn't even define whether an agency is supposed to file a certificate of compliance when a settlement has been entered into an initial decision. Now, the board has held in one case that that's not required. I think some agencies do, and some agencies probably don't. There is nothing in the board's regulations that further defines the term here. And there's nothing in the board's regulation that even tells the pro se of how. As my client, Mr. Carlson, was at the time. How in the world are you supposed to challenge a problem with a settlement agreement? How do you set a settlement agreement? You bring an enforcement petition. That's counterintuitive. It's not something that's explained in the regulation. So my client did the best he could at the time. When he learned of this extraordinary defamatory memorandum from the very man who had just signed the settlement agreement the day before, Mr. Hood, the very man who had signed the decision to fire this guy sometime before the board appealed, my client immediately, not a year later, a day later, wrote an email to the administrative judge of the Merit Systems and Protect Board, a highly respected judge, and said, this is not right. Is this a breach of the settlement agreement? Now, there are a few things that judge could have done. He could have ignored the email, which he did not. He could have responded to it by saying, go talk to your lawyer, which is what he did. Or he could have said, you know, you have a problem here. Why don't you bring an enforcement proceeding and take a look at 5 CFR 1201.181 and 182, which he did not. And I don't mean to yell at you, by the way, but I do get excited occasionally about these cases. The judge should have told this man what to do. He didn't. As a result, he went, he goes off on this long campaign to rectify the law. Goes to the inspector general of the agency, gets into district court in Chicago on a privacy act lawsuit. You know, if the AJ had tried to interpret the email that your client sent, really, he's not a lawyer, and told him, something is wrong here. This is what you should do. That's what you want AJs to do, to reach out and to give legal advice about how a client ought to proceed, and then what, are we going to hold him responsible, the AJ, that is, if he doesn't advise them of every possible thing he might be able to do in a district court litigation, or do this, or do that. I mean, it just seems to me that, quite honestly, the AJ did it exactly right here. They informed him to contact his lawyer. He had a lawyer at that point. He wasn't unrepresented by counsel. It was appropriate for the AJ to say, I can't address this as improper. You need to consult your lawyer. I with all due respect, Your Honor, I disagree. You want the AJ to give legal advice to one party in the litigation? I want the AJ to give regulatory advice any time they're dealing with a pro se or other individual. Is there a charge by law? Wasn't he represented by a lawyer, then? If you read his affidavit, he and his lawyer are essentially part of the case. Remember, the case had settled. The way practice of law works with the MSPB, you define a particular scope of work, and you move on as a lawyer. The case is settled, and that's the scope of your representation. You're done. And sometimes lawyers don't want to undo settlements. Think about it for a second as a lawyer. You just received substantial counsel. If you undo that settlement, what happens to those counsels? There are reasons why these things happen. They're not necessarily forever. So you expect the AJ to know he was no longer represented by counsel and to give legal advice? The AJ is responsible, and I think my colleagues at the MSPB would agree if you were to ask them, for advising people of the procedures that they're supposed to follow in these cases. And this court has so helped many times. This court has sent cases back to the board saying the AJ should have advised the individual of a particular right or remedy or procedure to follow and not remain silent. That is the AJ's responsibility. Do they give legal advice and turn into surrogate counsel? They do not. But there's a huge difference between remaining silent on an important procedural matter. A person comes to a judge and says the settlement agreement has been violated as a breach. In my estimation, the board's maybe different. The judge has a responsibility to say, file a petition for enforcement. Read 5 CFR 1201.181 to 180 to 182. And in my estimation, the judge was not fully responsible to those duties by failing to do that, except this fellow law on this long prevail that ended up here with me arguing lashes because of the Poet case. Mr. Brody, you're on your rebuttal time. Would you like to state it or? I shall resist, thank you. We'll give you your court three minutes. I'm here for my government, Ms. Friedman. Let me caution Mr. Carlson, if that is Mr. Carlson, I noticed you nodding your head and raising your hand. You speak through your counsel. If you have anything to say, Mr. Brody has your rebuttal. Ms. Friedman. May it please the court. Mr. Carlson's attempt to use latches as a reason to accept his untimely petition is indeed a strange construct of how latches is normally used in law. It is an affirmative defense, an equitable defense used against a petitioner, bringing a lawsuit to bar the petition because of unreasonable delay and because of prejudice to the defending party. Here, Mr. Carlson is the petitioner and it's not bringing up latches as a defense. You're saying there's no such thing as reverse latches? Not in any case that I could come across. And in fact, in the footnote in my brief, footnote three, I made an analogy to the writ of Quorinobis. And in that area, also, there's no set time limit and the Second Circuit, in that case, found that latches was also brought up as a basis to accept a late petition and the standard there was also a reasonable amount of time in which to bring the petition and the court said, no, you can't do this. So I've never seen latches used in this way. It is an equitable defense. And Mr. Carlson's construct eviscerates the term in the board's regulation that a party must promptly file a petition for enforcement. Now, Mr. Carlson's argument that the equitable defense of latches replaces the standard that a party must file within a reasonable time after actual knowledge of an alleged breach is untenable. The fact that the court and poets stated that the concepts are conceptually similar merely meant that unreasonableness is the same element that you would find in a case that is barred by latches and in a case where a petition for enforcement is dismissed as untimely. Mr. Carlson did that promptly in contact with the A.J., didn't he? He did that promptly in contact with the A.J., but if you look at the email message that he sent to the A.J., it's not clear, like Mr. Boyd had just said that he was saying that, oh, I wish to file a petition for enforcement. In fact, it was filed before the finality date, a month before the finality date of the initial decision, and Mr. Carlson had clear instructions just the day before in the initial decision on how to file a petition for enforcement and how to file a petition for review. He thought that the settlement agreement should be known. And then he waited a year? And then he waited a year, and the response that the A.J. gave to the email clearly indicated that the administrative judge did not consider. When did the A.J. respond in relation to Mr. Carlson's response to the email or was it close to when he filed the petition for enforcement? He filed almost immediately a response to the email saying, well, this decision is not final. This would be an ex parte communication. The response clearly showed that the administrative judge had no idea that he was even attempting to file a petition for enforcement or he would have maybe sent out a show cause or saying, is this what you're trying to do? But there was no- So that relates to reasonableness. Mr. Carlson waited a year. He's saying that was unreasonable. Yes. And that was within the board's discretion. Yes, absolutely. And as I started to say that I think that when the court or poet was making an analogy to latches, the fact that they followed up the analogy in saying that reasonableness is what's common in both kinds of cases, they could have said right after that, and also, we also think that prejudice to the agency should also be considered. But the court didn't do that. They just focused in on the unreasonableness of the delay. You don't think the AHA told him then as Mr. Carlson's counsel suggested exactly what procedures he should have used in the email? Well, the AHA, in fact, did tell him. Yes, he told him the very day before in the initial decision. It was a very clear instruction on what he had to do to file his petition for enforcement and what he had to do to file a petition for review if he thought that there was a mutual mistake or that the agreement should be void ad initio. And you don't think after receiving Mr. Carlson's email, it would have been fair to suggest that AJ should have known that Mr. Carlson needed further advice or notice at that point in time? No, and actually, the email stated, unlike what Mr. Carlson said later on, that my attorney and I- I saw that, yes. I was gonna ask him about that one as well. My attorney and I think that this is a real violation of the Privacy Act, and it may very well null the settlement agreement. What is your opinion? That's not, here, I'm filing a petition for enforcement because I think that the agreement has been breached. That's far from that. So the administrative judge had no idea, and I think he handled responding to Mr. Carlson just right. Now, the administrative judge, I think, correctly found that Mr. Carlson did not file his petition for enforcement within a reasonable amount of time after he became aware of the alleged breach. And he became aware of the alleged breach on February 26th. He did not file a petition for enforcement until a year later. But he pursued it. I think he just didn't know what to do, right? I mean, because he obviously pursued this. He filed an Inspector General investigation. He filed a number of other things. Yes. He just didn't get the right one within your time period.  He didn't know where to file. Well, pursuit in other forums, this court and the board has decided to be not a good reason to not file with the board, especially when you get such clear, unambiguous instruction on filing a petition for enforcement. I might also add that Mr. Carlson was not an unsophisticated pro se appellant. He was represented by an attorney that frequently appears before the board. There is evidence in the record that says that he consulted with Mr. Passman, his previous attorney, about what he should do. He consulted with many different attorneys to see how to proceed with the Privacy Act, what he should do. So this is not a case where he's a poor pro se that doesn't know anything and that has never consulted with an attorney. So I think that his reasons do not evidence that his delay was reasonable. Now, the other reason that he gave to the board to... Are there any regulations that excel upon how the MSPD comes to a conclusion, whether delay is or is not reasonable? Well, yes. In fact, in the very regulation that this case stems from, 1201.182, gives a 30-day time deadline if you are filing a petition for enforcement from an order of the board. And Kaczarski and Poet, the panel said, we can draw some instruction from the regulation, we can draw some parallels. And I think that in the case of an order, when a petitioner files his petition for enforcement, he does not have to show good cause for the delay if the agency doesn't give him notice that they comply. But in the case of a settlement agreement, of course, there's a presumption that the agency is going to comply. The regulation says that good cause is what he must show to excuse a delay if you do get that notice. And I think that that's instructed in seeing the circumstances of this case and looking at the factors that go into what makes up good cause for a delay could be used in this case as well. And I think that even using those factors, there's nothing in this case to indicate that his delay was reasonable. The final thing that I'd like to add is that one of the reasons he gave for his delay was that he was severely depressed. And I have to point out that the depression, as you suggested, did not prohibit him from consulting with other attorneys, from quickly cashing his back paycheck that the agency gave him in the settlement. It didn't prevent him from going to other forums. It didn't prevent him from going and filing a Privacy Act appeal in the district court. So, thus, based on the reasonableness standard, time standard in Pisarski and Kohler, we respectfully submit that the board's decision should be affirmed. And if there are no other questions, then I'll arrest you in my brief. Thank you. Thank you, Mr. Freeman. Mr. Joyner will give you your three minutes. Thank you. My good friend, Mr. Freeman, has made a few points to which I'll offer brief response. As to the so-called clarity of the board's enforcement process, what the initial decision said at page 51 of our appendix was that the settlement agreement has been made part of the record if you believe there's not been full compliance with the terms of the agreement. After this initial decision becomes final, you can ask the board to enforce the agreement by filing a petition for enforcement with the officer. It doesn't say anything about what happens if he believes that the agreement has been breached to the point where it's a nullity. The instructions given, again, it's counterintuitive. How do you enforce an agreement by making it go away? That's not explained except in the board's case law for a pro se appellant. That's a very difficult concept. It's difficult enough for lawyers. As to the question of advice and counseling, again, in our appendix, I'm not here to try the facts, but I will recite the record. At page 55 of our appendix is Mr. Carlson's affidavit where he explains at the second full paragraph of page 55 the difficulty with his prior counsel. He and his prior counsel essentially separated ways at the time that settlement agreement was filed. And after that, his prior counsel did not wanna get involved in breach issues. From the standpoint of counsel, that may be perfectly understandable. From the standpoint of the client, it's very difficult because it places the individual, that's page 55 of it, places the individual in a very difficult position. And as to the notice to Judge Ansorbi, one day after the settlement, about one day prior to the issuance of the initial decision accepting the settlement, he's writing to Ansorbi, the administrative judge. He says, I'm forwarding a copy of the letter, this is page 52 of the appendix, that was distributed to the agency regarding my settlement. My attorney and I believe it to be a blatant violation of the Privacy Act and that it may null the settlement agreement breach. I would be most interested in your opinion. Again, in my explanation, what the judge should have said, you have a problem filing an enforcement proceeding to set this agreement aside. Or the judge might also have said, you have a problem, I haven't accepted this agreement into the record yet because the judge had not, his initial decision did not issue, as near as I can figure it, until about a day after that email. He could have held up the whole process to check it out. That's what it might have been, that's not what occurred. I think my client did the best he could under the circumstances. Board's laws, very punitive on appeals and petitions for review, they wait and you're out of the board very frequently. Lots of cases like that, unfortunately. But it's a much more forgiving standard with respect to enforcement. It's a much less clear procedure. And my belief is that if this circuit has injected the law of practice into this type of analysis, then it should have been followed. And that was brought to the attention of the administrative judge and the board below. I thank you very much. Thank you, Mr. Brewer. There's a case to be taken under review.